## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | Chapter 13 |
| ) | |
| Albert R. Wiser ) | Case No.: 08-02592-jw |
| and Susan E. Wiser, ) | |
| ) | |
| Debtors ) | |
| _____) | |
| ) | |
| Albert R. Wiser ) | Adv. Pro. No: 10-80001-jw |
| and Susan E. Wiser, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| Rent-A-Center, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| Rent-A-Center, ) | |
| ) | |
| Third Party Plaintiff ) | |
| vs. ) | |
| ) | |
| Chris Wiser and ) | |
| Glenda K. Wiser ) | |
| ) | |
| Third Party Defendants ) | |
| _____) | |

---

**ORDER GRANTING RENT-A-CENTER'S MOTION FOR SUMMARY JUDGMENT**
_____

This matter comes before the Court on the Motion of Rent-A-Center, Inc. ("Rent-A-Center" or "RAC"), for Summary Judgment ("Motion") as to the causes of actions alleged in this adversary proceeding and the Memorandum in Opposition to Defendant's Motion for Summary Judgment filed by the Plaintiffs, Albert and Susan Wiser ("Debtors"). In support of its Motion, RAC provided the Affidavits of Mathew W. Gynwald and Charles Green.  Debtors filed affidavits but did not provide any evidence to contest any material fact presented.    Pursuant to

Fed. R. Bankr. P. 7056, the Court makes the following Findings of Fact and Conclusions of Law.[1]

# FINDINGS OF FACT

1. On April 30, 2008, Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code.

2. RAC is a Delaware corporation that operates a national system of rent-to-own stores providing its customers with household furnishings, appliances and electronics through consumer rental-purchase agreements. RAC does business in the State of South Carolina through its subsidiary, Rent-A-Center East, Inc., pursuant to Title 37 of the South Carolina Consumer Protection Code.

3. Debtors are former customers of RAC. Debtors did not name RAC as a creditor of the estate by the Debtors, and RAC did not file a claim against the bankruptcy estate.

4. Chris Wiser ("Chris") is Debtors' son and is married to Glenda K. Wiser ("Katie"). Chris is a former employee of RAC. He was a store manager of the RAC Store #3626, located in Goose Creek, South Carolina.

5. On or about April 25, 2009, while employed by RAC, Chris requested to lease a refrigerator ("Refrigerator") from RAC under RAC's employee purchase program. Chris stated that his refrigerator had "gone out" and he needed an immediate replacement. RAC's policy requires that a consumer rental-purchase agreement with an employee be prepared by the supervising District Manager.

6. At the time Chris applied for the rental-purchase agreement, the District Manager was not available to complete the transaction. A rental-purchase agreement, dated April 25, 2009 (the "Agreement" or "April 25th Agreement"), was prepared to meet Chris's urgent need for the Refrigerator. In order to avoid violating the company policy prohibiting rental to employees

---

[1] To the extent any of the Findings of Fact constitute Conclusion of Law, they are adopted as such. To the extent that any of the Conclusions of Law are Findings of Fact, they are adopted as such.

without District Manager approval, the Agreement was prepared on an interim basis under the name of Al Wiser and Susan Wiser. RAC has asserted, and Debtors do not dispute, that Chris was aware that the Agreement was structured in this way at the time it was prepared. All RAC's employees present at the time of the Agreement, including Chris, were aware that the paperwork was temporary and done to accommodate Chris's immediate need for the Refrigerator.

7. On April 25, 2009, RAC delivered the Refrigerator to the home of Chris and Katie as requested. At the time of the delivery, Katie signed the rental-purchase agreement acknowledging receipt in the following manner, "Susan Wiser, Glenda K. Wiser per Charles Green."[2]

8. Debtors did not sign or ratify the Agreement and were not bound thereby.

9. RAC never attempted to obtain or access a credit report on Debtors, Chris, or Katie relating to the April 25th Agreement. RAC took no action to report any information to any credit reporting agency regarding Debtors, Chris, or Katie.

10. On May 5, 2009, as soon as a District Manager was available, the Agreement was marked canceled, and a new rental-purchase agreement was prepared for and executed by Chris and Katie. RAC made an internal notation on its computer records that the Refrigerator was "returned" and the reason for the return was a "request." The notation made on RAC's computer records was for its own internal account and inventory management and was not information shared with any other entity.

11. RAC did not publicize or profit from the Agreement, the Debtors' name, likeness or any other aspect of the Debtors' personal identity. The only known people to have come into control of the April 25th Agreement are RAC's employees and Chris and Katie. The only personal information contained on the Agreement was Debtors' names, address, and telephone number, which information was independently known to Chris and Katie.

---

[2] Charles Green is an employee of RAC that delivered the Refrigerator to Chris and Katie.

12.     After the commencement of this adversary, RAC filed a third party complaint against Chris and Katie for indemnification, conversion, and breach of fiduciary duty. Chris and Katie did not file a timely answer, thereby admitting the allegations of RAC. A default judgment was entered against Chris and Katie in favor of RAC.

## **CONCLUSIONS OF LAW**

Pursuant to Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When a motion for summary judgment is filed, the Court does not weigh the evidence, but determines if there is a genuine issue for trial. Listak v. Centennial Life Ins. Co., 977 F. Supp. 739, 743 (D.S.C. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). Upon making this showing, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts demonstrating that a genuine issue exists for trial. Fed. R. Civ. P. 56(3); Campbell v. Capital One Bank (In re Broughton), C/A No. 99-06953-W, Adv. Pro. No. 00-80143-W, slip op. at 4-5 (Bankr. D.S.C. Mar. 20, 2001). "If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial." Listak, 977 F. Supp. at 743 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986)).

"Where a movant [supports] its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant must proffer countering

evidence sufficient to create a genuine factual dispute." In re Dig It, Inc., 129 B.R. 65, 66 (Bank. D.S.C. 1991). "To counter a motion for summary judgment, the non-movant may not rest on its pleadings or mere assertions of counsel." Td. at 66-67. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1999)). The mere existence of disputed facts does not require that a case go to trial. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323-24. "The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Id. Any inferences drawn in favor of the nonmoving party must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Id.

**I.      Debtors' First Cause of Action (FACTA and Consumer Protection Act)**

For their First Cause of Action, Debtors assert that RAC violated the notice requirements under the Fair and Accurate Credit Transaction Act of 2003 (16 C.F.R. § 602) or the Consumer Credit Protection Act (15 U.S.C. §1602(u)).

1.      FAIR AND ACCURATE CREDIT TRANSACTION ACT OF 2003

Congress amended the Fair Credit Reporting Act ("FCRA") by the Fair and Accurate Credit Transaction Act of 2003 ("FACTA") (codified as amended at 15 U.S.C. §§1681- 1681x (2003)). "'The purpose of the [FCRA and FACTA] is to require that 'consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit…'" Adams v. Nat'l Engineering Service Corporation, 620 F.Supp.2d 319, 327 (D.Conn. 2009) (quoting 15 U.S.C. § 1681).. Congress stated that the purpose of FACTA was "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, [and] make improvements in the use of, and consumer access to, credit information . . ." Pub. L. No.

108-159, 117 Stat. 1952 (2003).  The enactment of FACTA, however, did not abolish the Fair Credit Reporting Act ("FCRA"), as FACTA was intended by Congress to bolster FCRA.

"[T]he FCRA regulates 'consumer reporting agencies' in their preparation and dissemination of 'consumer reports,' and imposes civil liability upon consumer reporting agencies that willfully or negligently violate the statute."  Adams, 620 F.Supp.2d at 327.  FCRA defines the term "consumer reporting agency" to mean:

> [A]ny person which, for monetary fees, dues, or on a cooperative non-profit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. §1681a(f).  "The [FCRA] narrowly defines consumer reporting agencies by stating that they 'assemble or evaluate" consumer credit information."  Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575, 1579 (11th Cir. 1988) (citing D'Angelo v. Wilmington Med. Ctr., Inc., 515 F.Supp. 1250, 1253 (D.Del. 1981)).  FACTA, an amendment to the FCRA, likewise also applies to credit reporting agencies.

The FCRA defines a "consumer report" as a report by a consumer reporting agency intended to give information on a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" for the purpose of being used as a factor in determining the consumer's eligibility for credit, insurance, employment, or several other uses.  15 U.S.C. §1681a(d).

Debtors have provided no evidence that RAC is a credit reporting agency, as defined by statute, that it prepares credit reports, or that it provides consumer reports to third parties.  RAC does not engage, assemble, evaluate or furnish any information regarding its customers to third parties.  Rather, Debtors assert that although RAC is not a credit reporting agency, FACTA still

Case 10-80001-jw    Doc 34    Filed 06/21/10    Entered 06/21/10 12:34:15    Desc Main
Document      Page 7 of 14

applies to RAC because it is an entity affecting interstate commerce, thereby subject to the provisions of FCRA since the Federal Trade Commission has authority over entities that affect interstate commerce. Debtors cited 16 C.F.R. § 681.1(a) of the identity theft provisions under in support of their position, and it states:

> (a)   Scope. This section applies to financial institutions and creditors that are subject to administrative enforcement of the FCRA by the Federal Trade Commission *pursuant to 15 U.S.C. 1681s(a)(1)*. (emphasis added)

15 U.S.C. § 1681s(a)(1) provides:

> Compliance with the requirements imposed under this subchapter shall be enforced under the Federal Trade Commission Act [15 U.S.C. § 41 et seq.] by the Federal Trade Commission with respect to *consumer reporting agencies* and all other persons subject thereto…. (emphasis added)

Thus, by definition, RAC's liability is linked to it being a "consumer reporting agency." Moreover, section 681.1(a) clearly states that it only applies to "financial institutions" and "creditors." Debtors do not assert that RAC is either a financial institution or a creditor, as defined by applicable provisions in 15 U.S.C. § 1681a, and they have produced no evidence to support a finding to this effect.[3] For the foregoing reasons, RAC is entitled to summary judgment as to the cause of action under FACTA as a matter of law.

2.    CONSUMER CREDIT PROTECTION ACT (15 U.S.C. § 1602(U))

Debtors allege that RAC failed to provide information as required by 15 U.S.C. § 1602(u) of the Consumer Credit Protection Act ("CCPA"). However, § 1602(u) does not set forth any requirements. It instead simply provides a definition of the term "material

---

3    Debtors' only ground for asserting a claim under FACTA is the allegation that RAC is an entity affecting interstate commerce, which subjects them to the regulations administered by the Federal Trade Commission (FTC). Being subject to regulation by the FTC is just one aspect of the definition, Debtors' failure to produce evidence that RAC is also creditor or a financial institution and a consumer reporting agency is fatal to their ability to withstand summary judgment. Further Congressional intent is clear as to the purpose and targeted entities of these acts and therefore the Court declines to accept Debtors' argument that all entities that affect interstate commerce are subject to the provisions of FCRA and FACTA.

disclosures."[4]

For CCPA to apply, RAC must be a "creditor" within the statute. See Carter v. Alston, et al., 2005 WL 3021974 (E.D.Va. 2005). Under CCPA, a "creditor" is defined as:

> [O]ne who both (1) regularly extends, whether in connection with loans, sales or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). The disclosures cited in § 1602(u) are applicable only to "creditors." See 15 U.S.C. § 1631. Nothing in the Agreement indicates that RAC is a creditor under §1602(f) and Debtors have not brought forth any evidentiary proof that would raise a genuine issue of material fact that RAC is a creditor within the above statutory definition.

Debtors assert that even if there is no credit report involved and RAC is not a creditor, the Agreement constitutes a "consumer lease," which CCPA expressly covers. See 15 U.S.C. §§ 1667-1667f. A "consumer lease" is defined as "a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $25,000, primarily for personal, family, or household purposes…" 15 U.S.C. § 1667(1). The Agreement is not a consumer lease under the above statute. According to the Agreement, once the initial term of one week has passed, Debtors have the option to either return the Refrigerator to RAC and terminate the Agreement, or renew the Agreement for another week, two weeks or for an entire month by making an advance rental payment. Accordingly, the Agreement fails to

---

[4] Section 1602(u) states the term "material disclosures" means the disclosure, as required by this title, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 129(a).

constitute a consumer lease since the duration does not exceed four months.

More importantly, there was no consumer credit transaction or consumer lease between Debtors and RAC. As admitted in Debtors' affidavit, Debtors did not sign the agreement at issue and they are therefore not bound by the Agreement. RAC has no duty under the statutes relied upon by the Debtors to make disclosures to third parties. For the foregoing reasons, RAC is entitled to summary judgment as a matter of law as to the cause of action based on CCPA.

3.  IDENTIFY THEFT UNDER 16 C.F.R. § 603.2(A).

As a part of their First Cause of Action, Debtors assert damages as a result of identity theft under 16 C.F.R. § 603.2(a).[5] Similar to the discussion above under FACTA and CCPA, the identity theft provisions under 16 C.F.R. § 603.2(a) do not apply to RAC.[6] See 16 C.F.R. 681.1 *et seq*. These provisions define identity theft and provide mechanisms for creditors and financial institutions, who are also credit reporting agencies, to resolve reports against a consumer's credit report as a result of identity theft. See id. As previously discussed, Debtors have produced insufficient evidence to raise a genuine issue of material fact that RAC is a creditor, financial institution, or credit reporting agency. Thus, RAC is entitled to summary judgment to the extent Debtors seek damages for identify theft.

## II.     **Debtors' Second Cause of Action (South Carolina Unfair Trade Practices Act)**

Debtors assert in their Second Cause of Action that RAC violated the S.C. Unfair Trade Practices Act. Pursuant to the South Carolina Unfair Trade Practices Act ("UTPA"*)*, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... declared unlawful". S.C. Code Ann. §39-5-20 (Law. Co-op. 1976). In order

---

[5] Debtors' compliant cites 16 C.F.R. § 603.2(a) as a source of liability; however, that section of the CFR only defines identify theft. It provides for no private right of action or liability.

[6] By definition of 16 C.F.R. § 603.2(a), it appears that the identify theft, if any, was committed by Katie in her use of Mrs. Wiser's name in signing the Agreement.

to bring a cause of action pursuant to UTPA, Debtors must demonstrate the following:

1. that RAC engaged in an unlawful trade practice;
2. that Debtors suffered actual, ascertainable damages as a result of the RAC's use of the unlawful trade practice; and
3. that the unlawful trade practice engaged in by RAC had an adverse impact on the public interest.

See Havird Oil Co. v. Marathon Oil Co., 149 F.3rd 283, 291 (4th Cir. 1998).

To be actionable under UTPA, the unfair or deceptive act or practice must have an impact upon the public interest. Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition. York v. Conway Ford, Inc., 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997); Ardis v. Cox, 314 S.C. 512, 431 S.E.2d 267, 271 (Ct. App. 1993). If the alleged unfair or deceptive acts only affected the parties to a trade or commercial transaction, then courts have held that such acts are beyond the UTPA's embrace. See Omni Outdoor Advertising v. Columbia Outdoor Advertising, 974 F.2d 502, 507 (4th Cir. 1992); Ardis at 271; Noack Enterprises, Inc. v. Country Corner Interiors, 290 S.C. 475, 351 S.E.2d 347 (Ct. App. 1986).

In the present case, Debtors have provided no evidence that the acts complained of are capable of repetition. Without such evidence this Court would be required to speculate. "South Carolina Courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." Omni, 974 F.2d at 507.

The act in question involves only a single agreement executed when opening an account for Debtors' son on an interim basis, as an accommodation for his immediate, individual need. There is no evidence that RAC regularly creates or seeks to enforce such agreements against those who do not enter into a contract with it. Further, Chris, no longer employed with RAC, admits in his affidavit that the Agreement "was drawn up at my behest between my parents and

Rent-A-Center for a refrigerator." This admission makes clear that there is no genuine issue of material fact as to whether these events affected the public interest or are capable of repetition. The events at issue had purely a private impact, if any, and are not capable of repetition based upon Chris's separation of employment from RAC. Accordingly, RAC is entitled to summary judgment as a matter of law on Debtors' cause of action for violation of UTPA.

**III      Debtors' Third Cause of Action (Wrongful Appropriation of Publicity)**

Debtors allege they have suffered damages from RAC's wrongful appropriation of their right of publicity. In their answer to RAC's Motion for Summary Judgment, Debtors emphasized that their claim was based on *right of publicity*, which the court in Gignilliat recognized as a separate cause of action from that of right of privacy. See Gignilliat v. Gignilliat, Savitz & Bettis, LLP, 385 S.C. 452, 458, 684 S.E.2d 756, 759 (2009); also see Winterland Concessions Co. v. Sileo, 528 F.Supp. 1201, 1213 (D.Ill. 1981) ("One of the species of the right of privacy recognized by the cases and the commentators is the right of publicity. Violation of this right constitutes the tort of appropriation of a plaintiff's name or likeness for [the] defendant's benefit."). The terms "infringement on the right of publicity" and "wrongful appropriation of personality" are interchangeable. See Gignilliat at 760.

To successfully state a claim for infringement of the right of publicity, or misappropriation of personality, Debtors must show: 1) an appropriation without consent; 2) of Debtors' name or likeness; and 3) for another's use or benefit. Id. at 762. RAC correctly argues that wrongful appropriation of personality involves infringement on the right to the *commercial* protection of one's name, likeness, or identity. Id. RAC also correctly asserts that wrongful appropriation of personality involves infringement on the right to *publicize* and profit from one's name, likeness, and other aspects of personal identity. Id. at 760; see also Sloan v. South Carolina Dep't. of Pub. Safety, 355 S.C. 321, 325-26, 586 S.E.2d 108, 110 (2003)

(stating wrongful appropriation of personality concerns the plaintiff's right at common law to *publicize* and profit from his name or identity); see also Snakenberg v. Hartfor. Cas. Ins. Co. Inc., 299 S.C. 164, 170, 383 S.E.2d 2, 5 (S.C. App. 1989). Other jurisdictions have also held that "the right of publicity protects the *commercial* value of a name or likeness" Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 714 n.6, 320 S.E.2d 70, 85 n.6 (1984), and that the "right of publicity relate[s] to *commercial* damage to the business value of human identity." Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1446 (11th Cir. 1998).

In Holloman v. Life Insurance Co. of Virginia, the Supreme Court of South Carolina held that an insurance company's use of the plaintiff's name without her consent or knowledge, to take out a policy with her son as the beneficiary, failed to constitute a commercial use or unwarranted publicity of the plaintiff's name. 192 S.C. 454, 458, 7 S.E.2d 169, 171 (1940). In that case, defendant insurance company solicited the plaintiff's consent to allow her son to take out a policy on plaintiff's life. When the plaintiff refused to consent, the company's agent falsely informed the son that the plaintiff had signed an application for the policy and had consented to its being issued with the son as beneficiary. The plaintiff's son agreed to take out such policy, and the son held the policy for some time before the plaintiff discovered its issuance. The court stated "the issuance of a small life insurance policy seems to fall short of publicity." Id. at 170.

It appears to the Court that RAC did not infringe on Debtors' right to either publicize or make a commercial use of and benefit from their names. RAC did not publicize or profit from Debtors' names, likeness, or any other aspect of Debtors' personal identities. The only use of Debtors' names was on the face of the April 25th Agreement. Neither the Agreement, nor any details of the transaction were provided to the public. RAC has not used Debtors' names for profit. The April 25th Agreement, like the insurance policy in Holloman, "falls short of

publicity." See id.

RAC is entitled to summary judgment as a matter of law as to any alleged cause of action for infringement on the right of publicity.[7]

## IV. **FAILURE TO CREATE A GENIUINE ISSUE OF MATERIAL FACT REGARDING DAMAGES**

Fatal to each of Debtors' causes of action is Debtors' failure to set forth evidence or create a genuine issue of material fact about how they have been damaged. There is no evidence before the Court that Debtors' credit has been harmed, that they made or were required to make payment to RAC on an agreement that they were not otherwise bound by, or that they otherwise suffered economic harm due to the course of events set in motion by the actions of the Debtors' son and his wife. Debtors' affidavits are devoid of any allegation or evidence of damages. See Sipe v. Workhorse Custom Chassis, LLC, 572 F.3d 525, 531 (8th Cir. 2009) (affirming summary judgment when a plaintiff fails to create a genuine issue of material fact as to whether the plaintiff suffered harm). With the exception of the attorney's fees that they may have incurred to bring this action, now dismissed without merit, the Court cannot find a scintilla of evidence of harm to Debtors and therefore summary judgment is appropriate under each cause of action.

## **CONCLUSIONS**

Based upon the foregoing, Rent-A-Center's Motion for Summary Judgment is granted as to all Debtors' causes of action as a matter of law. Debtors' complaint is dismissed with

---

[7] At the hearing, Debtors withdrew any alleged cause of action for defamation. Debtors' complaint does not specifically speak to defamation but alludes to a common law action for libel and slander and thus the Court assumes that Debtors are withdrawing their action for libel and slander. Summary judgment would also be appropriate on these causes of action because each of these actions requires a publication, verbally or in writing, to a third party. See Kedrick v. Citizens and Southern Nat. Bank, 223 S.E.2d 866 (S.C. 1976). In this case, Debtors have failed to set forth any evidence or allegation in their affidavits that the false statement, created by Katie, has been published by RAC to a third party. Therefore, RAC is entitled to summary judgment as a matter of law to the extent that Debtors seek to maintain an action for libel or slander.

prejudice. A hearing will be held on July 12, 2010 at 1:30 p.m. at the United States Bankruptcy Court, 145 King Street, Room 225, Charleston, South Carolina to determine RAC's damages related to its third party complaint against Chris and Katie.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/21/2010**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 06/21/2010